**Juan C. Chavez**, OSB #136428
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503-944-2270
Facsimile: 971-275-1839

**David F. Sugerman**, OSB # 862984
Sugerman Law Office
707 SW Washington St Ste 600
Portland OR  97205
Tel: 503-228-6474
Facsimile: 503-228-2556

    Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| MICHAEL THOMPSON, *individually, on behalf of a class of other similarly situated*,<br><br>Plaintiffs,<br><br>   v.<br><br>COLUMBIA COUNTY; SHERIFF BRIAN PIXLEY; and LT. BROOKE MCDOWALL,<br><br>Defendants. | Case No. 3:20-cv-00490<br><br>COMPLAINT<br><br>Civil Rights Action (42 U.S.C. § 1983) |

    This is a civil rights action against the above-named parties for the willful and/or deliberately indifferent medical care being granted to persons in the Columbia County Jail. Across Oregon, and across the world, people are suffering from the pandemic spread of Novel Coronavirus, or COVID-19. While the pandemic can be described as a broad, collective societal

failure to appropriately and humanely fund and distribute health services, and while it poses a particularly dire risk to any persons in close, closed quarters, it is also a particular and acute problem of the Columbia County Jail (CCJ), a facility for which Defendants are responsible.

CCJ has willfully and wantonly ignored the public health threat caused by this global pandemic. COVID-19 is most likely to cause serious illness or death to older adults and those with certain underlying medical conditions. Plaintiffs fall into those categories of persons with heightened vulnerability. Moreover, the risk of serious illness or death from COVID-19 is greatly increased where people are not provided the care and facilities to properly treat the infection. Because Defendants choose to ignore this threat by creating a health care system that denies Plaintiffs access to prevention, proper testing, and treatment for COVID-19, they are in violation of the Constitutions of the United States of America and Oregon.

## JURISDICTION

1. This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), (4).

## VENUE

2. Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). The acts and practices alleged herein occurred in St. Helens, Columbia County, Oregon.

## PARTIES

3. Plaintiff Michael Thompson currently resides at the Columbia County Jail in St. Helens, Oregon. Mr. Thompson has prediabetes, asthma, and congestive heart failure, which place him at an increased risk of a serious COVID-19 infection and death.

4.      Defendant Columbia County is a political subdivision of the State of Oregon with the capacity to sue and be sued, and it operates CCJ

5.      Defendant Brian Pixley is the elected sheriff of Columbia County and is directly responsible for ensuring that the County's jail health program complies with State and Federal laws. Columbia County Sheriff's Office operates CCJ, where persons are held either before their criminal trials or after sentencing if the length of sentence is under one year. At all times relevant, Defendant Pixley was acting under color of law and is sued in his individual and official capacity.

6.      Defendant Lieutenant Brooke McDowall is a correctional supervisor of CCJ and employee of Columbia County Sheriff's Office. At all times relevant, Defendant McDowall was acting under color of law and is sued in his individual and official capacity.

## CLASS ACTION ALLEGATIONS

7.      Plaintiff brings this action pursuant to Rules 23(b)(1), 23(b)(2), and, in the alternative. 23(c)(4) of the Federal Rules of Civil Procedure on behalf of himself and a class of similarly situation individuals.

8.      The class that Plaintiff Thompson seeks to represent is defined as all persons in CCJ held pre-trial or post-trial who, according to the Centers for Disease Control and Prevention and the Oregon Health Authority, are most at risk of suffering from severe COVID-19 symptoms, including death. These high-risk conditions include[1]:

- Aged 60 or older

---

[1] The Oregonian, https://www.oregonlive.com/coronavirus/2020/03/list-of-underlying-conditions-putting-people-at-higher-risk-of-coronavirus-illness-according-to-oregon-health-officials.html

  Lung disease, including asthma or chronic obstructive pulmonary disease (chronic bronchitis or emphysema) or other chronic conditions associated with impaired lung function or that require home oxygen

- Compromised immune system (immunosuppression) (e.g., seeing a doctor for cancer and treatment such as chemotherapy or radiation, receiving an organ or bone marrow transplant, taking high doses of corticosteroids or other immunosuppressant medications, HIV with a CD4 count <200)

- Blood disorders (e.g., sickle cell disease or on blood thinners)

- Chronic kidney disease

- Chronic liver disease

- Current or recent pregnancy (in the last two weeks)

- Diabetes, or other endocrine disorders

- Metabolic disorders (such as inherited metabolic disorders and mitochondrial disorders)

- Heart disease (such as congenital heart disease, congestive heart failure and coronary artery disease)

- Neurological and neurologic and neurodevelopment conditions

9. The class period commences on March 24, 2020, and extends to the date on which Columbia County is enjoined from, or otherwise ceases, enforcing their unconstitutional policy, practice, and custom of refusing prevention, testing, and treatment for COVID-19. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees, or assignees.

10. This action has been brought and may properly be maintained as a class action under Federal law and satisfies numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

11. Joinder is impracticable because: (1) the class members are numerous; (2) the class is fluid because itincludes future members who will be housed in CCJ and current class members

who will leave CCJ during the class period; (3) the class members are incarcerated, making their abilities to institute individual lawsuits limited; and (4) the class supports judicial economy.

12. Upon information and belief, including statistics, there are at least 40 people, all of whom are members of the proposed class.

13. Common questions of law and fact exist as to all members of the class, in that they all have a right to be administered COVID-19 prevention, testing, and treatment measures.

14. Plaintiffs' claims are typical of the claims of the class members. The harms Plaintiffs suffer, as a result of Defendants' course of conduct, are typical of the harms suffered by class members.

15. The representative Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class. Plaintiffs have no interests adverse to the interests of the class. Plaintiffs retained *pro bono* counsel with experience and success in the prosecution of civil rights litigation. Counsel for Plaintiffs know of no conflicts among class members or between counsel and class members.

16. Plaintiffs seek injunctive and declaratory relief. As such, prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class. Further, any injunction requiring Defendants to address their constitutional violations would prevent other litigants from seeking a different injunction. Plaintiffs seek class certification under Fed. R. Civ. P. 23(b)(1).

17. This action, in part, seeks declaratory and injunctive relief. As such, in addition to certification under Rule 23(b)(1) and in the alternative, Plaintiffs seek class certification under

Fed. R. Civ. P. 23(b)(2), in that all class members were subject to the same arbitrary and prolonged detention. In short, Defendants acted on grounds generally applicable to all class members.

18.     In the alternative, Plaintiff(s) also seek partial certification under Fed. R. Civ. P. 23(c)(4).

## FACTUAL ALLEGATIONS

19.     Since 2019, Novel Coronavirus, or COVID-19, has ravaged the world, country to country. The extensive body of evidence regarding COVID-19 demonstrates that it is a highly communicable virus that spreads through close-contact. It is a pandemic,[2][3] and it has been declared a national and state emergency.[4] In only a few months, 407,485 people worldwide have been diagnosed with COVID-19, and more than 18,200 of those people have died. Over 44,000 Americans have tested positive for COVID-19, while the number of deaths has risen to at least 544, including 110 in Washington state.[5] Those numbers are growing rapidly every day. There is no vaccine or cure for COVID-19. No one is immune.

///

///

---

[2]     Betsy McKay et al., *Coronavirus Declared Pandemic by World Health Organization*, Wall St. J. (Mar. 11, 2020, 11:59 PM), available at https://www.wsj.com/articles/u-s-coronavirus-cases-top-1-000-11583917794.
[3]     Pandemics occur when a new virus emerges to infect people and can sustainably spread between people. Because there is little to no pre-existing immunity against the new virus, it spreads easily amongst humans.
[4]     Derek Hawkins et al., *Trump Declares Coronavirus Outbreak a National Emergency*, Wash. Post (Mar. 13, 2020, 10:46 AM), available at https://www.washingtonpost.com/world/2020/03/13/coronavirus-latest-news/; Lizzy Ackerman, *Gov. Kate Brown declares coronavirus state of emergency, announces 7 new Oregon cases*, The Oregonian, (Mar. 9, 2020, updated Mar. 9, 2020), available at https://www.oregonlive.com/coronavirus/2020/03/7-new-coronavirus-cases-in-oregon-officials-say-gov-kate-brown-declaring-state-of-emergency.html.
[5]     *Cases in U.S.*, Centers for Disease Control and Prevention, available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (stating 201 544deaths from COVID-19 have occurred within the United States as of March 240, 2029019, with 44,18315,219 total cases); *Coronavirus: Inslee issues mandatory statewide stay-at-home order*, KIRO 7 News (March 24, 2020) available at https://www.kiro7.com/news/local/coronavirus-inslee-announces-mandatory-statewide-stay-at-home-order/XIDPHMLVOJAAREQ5YCL75367PU/.

**COVID-19 Transmission**

20.     The transmission of COVID-19 is expected to grow exponentially. Nationally, projections by the CDC indicate that over 200 million people in the United States could be infected with COVID-19 over the course of the pandemic without effective public health intervention, with as many as 1.5 million deaths in the most severe projections.[6]

21.     COVID-19 is a particularly contagious disease. A recent study showed that the virus could survive for up to three hours in the air, four hours on copper, twenty-four hours on cardboard, and two to three days on plastic and stainless steel.[7] Another study of an early cluster of COVID-19 cases in Wuhan, China, revealed the dangers of indirect transmission resulting from infected people contaminating common surfaces—in the study, it was a communal mall bathroom.[8] New research also shows that controlling the spread of COVID-19 is made even more difficult because of the prominence of asymptomatic transmission—infection transmission by people who are contagious but exhibit limited or no symptoms, rendering any screening tools dependent on identifying symptomatic behavior ineffective.[9] COVID-19 has been especially dangerous in areas of close confinement, like cruise ships and assisted living facilities. It follows that jails and prisons are particularly vulnerable to an outbreak. In fact, jails and prisons are at a

---

[6]     Chas Danner, *CDC's Worst-Case Coronavirus Model: 214 Million Infected, 1.7 Million Dead*, N.Y. Mag. (Mar. 13, 2020), available at https://nymag.com/intelligencer/2020/03/cdcs-worst-case-coronavirus-model-210m-infected-1-7mdead.html.
[7]     Marilynn Marchione/AP, *Novel Coronavirus Can Live on Some Surfaces for Up to 3 Days, New Tests Show*. TIME, (Mar. 11, 2020), available at https://time.com/5801278/coronavirus-stays-on-surfaces-days-tests/.
[8]     Cai J, Sun W, Huang J, Gamber M, Wu J, He G. *Indirect virus transmission in cluster of COVID-19 cases, Wenzhou, China, 2020*. 26 Emerg Infect Dis. 6, (2020), available at https://doi.org/10.3201/eid2606.200412 (last visited Mar. 20, 2020).
[9]     Chelsea Ritschel, *Coronavirus: Are People Who Are Asymptomatic Still Capable of Spreading COVID-19?* Independent, available at https://www.independent.co.uk/life-style/health-and-families/coronavirus-symptoms-asymptomatic-covid-19spread-virus-a9403311.html (last visited Mar. 20, 2020).

greater risk because of their close quarters, the proportion of medically [10] In the Daenam inpatient psychiatric ward in South Korea, where conditions of confinement [11][12]

22. Experts predict that "[a]ll prisons and jails should anticipate that the coronavirus will enter their facility."[13] Jails all over the country and world are releasing people with the aim of preventing massive outbreaks of severe illness and death from COVID-19.[14] States, Counties, and jails that have announced releasing those in their custody include, but are not limited to: Jefferson County Jail in Kentucky,[15] Mobile County Metro Jail[16] and three other counties[17] in Alabama, Spokane in Washington,[18] Mercer County, Ohio,[19] Jefferson County, Texas,[20]

---

[10] Evelyn Cheng and Huileng Tan, *China Says More than 500 Cases of the New Coronavirus Stemmed from Prisons*, CNBC, (Feb. 20, 2020), available at https://www.cnbc.com/2020/02/21/coronavirus-china-says-two-prisons-reported-nearly-250-cases.html.

[12] Min Joo Kim, *How a South Korean Psychiatric Ward Became a 'Medical Disaster' When Coronavirus Hit*, THE WASHINGTON POST (February 29, 2020) https://www.washingtonpost.com/world/asia_pacific/how-a-south-korean-psychiatric-ward-became-a-medical-disaster-when-coronavirus-hit/2020/02/29/fe8f6e40-5897-11ea-8efd-0f904bdd8057_story.html.

[13] Evelyn Cheng and Huileng Tan, CNBC, note 11.(quoting Tyler Winkelman, co-director of the Health, Homelessness, and Criminal Justice Lab at the Hennepin Healthcare Research Institute in Minneapolis).

[14] BBC, *US jails begin releasing prisoners to stem Covid-19 infections*, (Mar. 19, 2020), https://www.bbc.com/news/world-us-canada-51947802 (discussing that some US cities have released hundreds of people from their jails and that Iran has released over 85,000 people to combat the pandemic).

[15] More than 100 pretrial defendants are being released. https://www.courier-journal.com/story/news/2020/03/17/kentucky-releasing-some-pretrial-defendants-due-coronavirus/5074206002/.

[16] Releasing people over 65 years old who are charged with non-violent misdemeanors. https://www.wkrg.com/health/coronavirus/some-inmates-over-65-to-be-released-from-metro-jail-due-to-coronavirus/

[17] Sheriff's ordered to release inmates based on a person's risk to the public. *Coronavirus: County jail inmates ordered released in Autauga, Elmore, Chilton counties*, Marty Roney, Montgomery Advertiser, (Mar. 18,2020).

[18] Released dozens of people following an emergency court order. https://www.spokesman.com/stories/2020/mar/17/dozens-released-from-spokane-county-custody-follow/.

[19] Granted early release to around 50 people held on low-level charges. https://www.wfmj.com/story/41912067/mercer-co-jail-releases-low-level-inmates-to-make-room-for-medical-isolation-cells-amid-coronavirus-pandemic.

[20] Taking steps to reduce the jail population from 800 to 600 in the next few weeks, having already released some people held on misdemeanors or unpaid traffic citations, some who have health issues, and some not considered a flight risk. https://www.12newsnow.com/article/news/local/jefferson-county-jail-cancels-visitation-releases-some-inmates-amid-coronavirus-concerns/502-f7e9e268-e131-46af-a478-95553f309bf8.

Hillsborough County, Texas,[21] Mecklenburg County, North Carolina,[22] Cook County Jail in Illinois,[23] Sacramento, California,[24] Alameda County, California,[25] New York City,[26] Allegheny County, Pennsylvania,[27] Lexington County, South Carolina,[28] Jefferson County, Colorado,[29] New Jersey,[30] and Columbia County's neighbor, Washington County, Oregon.[31]

23.     In Oregon, where testing is not readily available, 201 people have tested positive and 8 people have died.[32] Both nationwide and in Oregon, a large and disproportionate percentage of

---

[21] Sheriff announced the release of 164 people from his jail. https://www.tampabay.com/news/hillsborough/2020/03/19/hillsborough-sheriff-releases-164-county-jail-inmates-to-reduce-coronavirus-risk/?utm_expid=.rZxRlJI0T86fmAabR1Jv8w.0&utm_referrer=https%3A%2F%2Ft.co%2FMK07AIkQ9e%3Famp%3D1.

[22] Nearly 50 people scheduled for release. https://www.charlotteobserver.com/news/coronavirus/article241279836.html.

[23] Released several detainees who are highly vulnerable to coronavirus who had been held on low-level, non-violent charges. David Struett, *Cook County Jail releases several detainees who are 'highly vulnerable' to coronavirus*, Chicago Sun Times, (Mar 17, 2020), available at https://chicago.suntimes.com/coronavirus/2020/3/17/21183289/cook-county-jail-coronavirus-vulnerable-detainees-released-covid-19

[24] Some low-level, non-violent inmates are being released following a court order. Kristopher Hooks & Ja'Nel Johnson, *Some non-violent, low-level inmates being released from Sacramento jails amid coronavirus pandemic*, ABC10, (Mar. 18, 2020), https://www.abc10.com/article/news/health/coronavirus/sacramento-inmates-being-released-from-amid-coronavirus-pandemic/103-d10ab80d-81d6-41e1-bc47-e6643e1e0d7e

[25] 247 inmates have been approved for sentence modification and early release, and another 67 inmates had already been released. https://sanfrancisco.cbslocal.com/2020/03/19/coronavirus-pandemic-247-alameda-county-jail-inmates-approved-for-early-release/.

[26] Mayor announced plans to release "vulnerable" people from city jails. https://nypost.com/2020/03/18/nyc-to-begin-releasing-inmates-amid-coronavirus-outbreak/?utm_campaign=iosapp&utm_source=message_app

[27] Plan to release nearly 100 people a day from jail. https://www.wtae.com/article/release-of-up-to-100-allegheny-county-jail-inmates-a-day-under-way-as-coronavirus-precaution/31787878.

[28] Releasing people under a state Supreme Court directive to release anyone facing non-capital charges who is not a danger to the community or an extreme flight risk. https://www.coladaily.com/communities/lexington/jail-numbers-affected-by-judicial-coronavirus-directives/article_bb2df04e-6a22-11ea-a187-f3aec5c6ac7d.html.

[29] Releasing people from jail who have served at least 50% of their sentence and meet all other early release program requirements. https://kdvr.com/news/coronavirus/inmates-being-released-early-from-jeffco-detention-facility-amid-coronavirus-concerns/.

[30] Approved an order mandating that any inmate currently serving a county jail sentence as a condition of probation, or as a result of a municipal court conviction, shall be released. https://www.nj.com/coronavirus/2020/03/nj-will-start-releasing-some-non-violent-inmates-from-jail-this-week-in-effort-to-stop-outbreak-behind-bars.html.

[31] Released 60 inmates to allow for appropriate social distancing. Noelle Crombie, *Oregon courts, jails respond to coronavirus: Washington County jail to release 60 inmates; court hearings see widespread delays*, The Oregonian (March 16, 2020), https://www.oregonlive.com/coronavirus/2020/03/oregon-courts-jails-respond-to-coronavirus-washington-county-jail-to-release-60-inmates-court-hearings-see-widespread-delays.html

[32]     Shane Dixon Kavanaugh, *Coronavirus in Oregon: New cases bring state tally to 88, health officials say 3 more dead as known cases climb to 211, health officials say*, The Oregonian, (Mar.

the people who have tested positive for the virus have lived in congregate-living facilities, which accounts for the disproportionately large number of deaths in Washington state. Because of that greater risk to persons in congregate living settings, Governor Brown's office has stated that the state's second-highest priority for testing, behind only those persons with symptoms who work in critical infrastructure, is for anyone with symptoms in correctional facilities, hospitals, and other high-risk congregate settings.[33]

24.     The CDC recommends the following for virus transmission prevention:

> "• Wash your hands often with soap and water for at least 20 seconds especially after you have been in a public place, or after blowing your nose, coughing, or sneezing.
>
> "• If soap and water are not readily available, use a hand sanitizer that contains at least 60% alcohol. Cover all surfaces of your hands and rub them together until they feel dry.
>
> "• Stay home if you are sick, except to get medical care.
>
> "• [After coughing or sneezing, i]mmediately wash your hands with soap and water for at least 20 seconds. If soap and water are not readily available, clean your hands with a hand sanitizer that contains at least 60% alcohol.
>
> "• Clean and disinfect frequently touched surfaces daily."[34]

///

///

---

2419, 2020), available at https://www.oregonlive.com/coronavirus/2020/03/coronavirus-in-oregon-new-cases-bring-state-tally-to-88-health-officials-say.html
https://www.oregonlive.com/coronavirus/2020/03/coronavirus-in-oregon-3-more-dead-as-known-cases-climb-to-209-health-officials-say.html
[33]     Brad Schmidt, *Oregon prioritizes who can be tested for coronavirus -- with the tests it doesn't have*, Oregonian, (Mar. 19, 2020), available at https://www.oregonlive.com/coronavirus/2020/03/oregon-prioritizes-who-can-be-tested-for-coronavirus-with-the-tests-it-doesnt-have.html
[34]     Centers for Disease and Prevention, *How to Protect Yourself,* https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html.

**High-Risk Categories**

25.     COVID-19 is more likely to cause serious illness and death for older adults and those with certain underlying medical conditions, including lung disease, heart disease, chronic liver or kidney disease (including hepatitis and dialysis patients), diabetes, epilepsy, hypertension, compromised immune systems (such as from cancer, HIV, or autoimmune disease), blood disorders (including sickle cell disease), inherited metabolic disorders, stroke, developmental delay, and pregnancy. These underlying medical conditions increase the risk of serious COVID-19 disease for people of any age. For people over the age of 50 or with medical conditions that increase the risk of serious COVID-19 infection, symptoms such as fever, coughing and shortness of breath can be especially severe. Plaintiffs fall into these two categories of heightened vulnerability.[35]

26.     The COVID-19 virus can cause severe damage to lung tissue, sometimes leading to a permanent loss of respiratory capacity, and can damage tissues in other vital organs, including the heart and liver. Patients with serious cases of COVID-19 require advanced medical support, including negative pressure ventilation and extracorporeal mechanical oxygenation in intensive care. Patients not killed by serious cases of COVID-19 may face prolonged recovery periods, including extensive rehabilitation from neurologic damage and loss of respiratory capacity.

---

[35]     Medical information in this and the paragraphs that follow are drawn from the expert testimony of two medical professionals filed in a recent filed federal case in Washington State, as well the website of the Harvard Medical School. *See* Expert Declaration of Dr. Marc Stern: https://www.aclu.org/legal-document/dawson-v-asher-expert-declaration-dr-marc-stern; Expert Declaration of Dr. Robert Greifinger: https://www.aclu.org/legaldocument/dawson-v-asher-expert-declaration-dr-robert-greifinger; Expert Declaration of Dr. Jonathan Golob https://www.aclu.org/legal-document/dawson-v-asher-expert-declaration-dr-jonathan-golob?redirect=dawson-vasher-expert-declaration-dr-jonathan-golob; HARVARD MEDICAL SCHOOL, CORONAVIRUS RESOURCE CENTER, *As coronavirus spreads, many questions and some answers*, https://www.health.harvard.edu/diseases-andconditions/coronavirus-resource-center (last visited Mar. 19, 2020).

27.     Emerging evidence suggests that COVID-19 can also trigger an over-response of the immune system, further damaging tissues in a cytokine release syndrome that can result in widespread damage to other organs, including permanent injury to the kidneys and neurologic injury. These complications can manifest at an alarming pace. Patients can show the first symptoms of infection in as little as two days after exposure, and their condition can seriously deteriorate in as little as five days or sooner.

28.     Most people in higher risk categories who develop serious disease will need advanced supportive care requiring highly specialized equipment that is in limited supply, such as ventilator assistance, and an entire team of care providers, including 1:1 or 1:2 nurse to patient ratios, respiratory therapists, and intensive care physicians. That level of support can quickly exceed local health care resources.

29.     Patients in high-risk categories should expect a prolonged recovery, including the need for extensive rehabilitation to accommodate profound reconditioning, loss of digits, neurologic damage, and the loss of respiratory capacity.

30.     The need for care—including intensive care—and the likelihood of death is much higher from COVID-19 than from influenza. According to recent estimates, the fatality rate of people infected with COVID-19 is about ten times higher than a severe seasonal influenza, even in advanced countries with highly effective health care systems. According to preliminary data from China, a much greater percent of people in high-risk categories who contracted COVID-19 died.[36]

---

[36]     World Health Organization, *Report of the WHO-China Joint Mission on Coronavirus Disease 2019* (COVID-19), at 12 (Feb. 28, 2020), https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf (finding fatality rates for patients with COVID-19 and co-morbid conditions to be:

31.     The only known, effective measures to reduce the risk for vulnerable people of serious illness or death caused by COVID-19 are social distancing and improved hygiene, which have led to unprecedented public health measures around the world.[37]

**Life in CCJ**

32.     CCJ is not following mMany of the CDC recommendations are not currently being followed by CCJ. Indeed, the recommendation to "stay home" is not tenable for inmates at CCJ, including Plaintiffs. The CDC notes that COVID-19 spreads through "close contact," or contact within six6 feet of another person.[38] In consultation with medical professionals, the only advisable and effective means to ensure that a jail can comply with CDC guidelines to maintain proper social distancing and hygiene and to protect the people with the greatest vulnerability to COVID-19 from transmission of the virus is to reduce the inmate population of the jail. Moreover, experts in correctional public health have recommended the release from custody of people most vulnerable to COVID-19. Release also allows for greater risk mitigation for all people who remain in custody, people who work in CCJ, and people outside of CCJ who come into contact with those who work in the facility.

---

"13.2% for those with cardiovascular disease, 9.2% for diabetes, 8.4% for hypertension, 8.0% for chronic respiratory disease, and 7.6% for cancer"); Wei-jie Guan et al., *Comorbidity and its impact on 1,590 patients with COVID-19 in China: A Nationwide Analysis*, medRxiv, at 5, (Feb. 27, 2020), https://www.medrxiv.org/content/10.1101/2020.02.25.20027664v1.full.pdf (finding that even after adjusting for age and smoking status, patients with COVID-19 and comorbidities of chronic obstructive pulmonary disease, diabetes, hypertension, and malignancy were 1.79 times more likely to be admitted to an ICU, require invasive ventilation, or die, the number for two comorbidities was 2.59); Fei Zhou et al., *Clinical course and risk factors for mortality of adult inpatients with COVID-19 in Wuhan, China: a retrospective cohort study*, Lancet (March 11, 2020), tb. 1, https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30566-3/fulltext (finding that among hospital patients, who tended to be older, of those who had COVID-19 and died, 48% had hypertension, 31% had diabetes, and 24% had coronary heart disease).

[37]    Governor Kate Brown's Executive order No. 20-12 (Mar. 23, 2020), available at https://www.documentcloud.org/documents/6817687-Stay-Home-Save-Lives.html.
[38]    Centers for Disease and Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html.

33. Plaintiffs have reported that they are not receiving the following necessary preventative measures:

    a. unlimited soap that is freely accessible;

    b. laundry services frequent and consistent enough to sanitize cells;

    c. cleaning materials to clean and sanitize cells;

    d. clean and sanitized cells;

    e. clean and sanitized public areas;

    f. adequate space to socially distance from other inmates;

    g. medical checks within an hour of demonstrating symptoms of COVID-19;

    h. quarantined rooms with negative air pressure (air being sucked out of room as to prevent spread outside of the room); and/or

    i. masks to wear when demonstrating symptoms of COVID-19.

34. Inmates at CCJ sleep in four-person cells on two sets of bunk beds. They rarely spend time at a distance further than six feet from each other. The only cleaning supplies CCJ provides to Plaintiffs and other persons held in custody are part of a small hygiene kit that includes a bar of soap, shampoo, a comb, a toothbrush, and toothpaste.

35. Columbia County sits among three metropolitan counties with significant COVID-19 infection counts. Washington County to the south has 76 confirmed cases; Multnomah County to the southeast has 25 confirmed cases; and Clark County to the east has 16 confirmed cases.[39] Those numbers, however, likely represent an undercount, given the lack of testing in the

---

[39] Shane Dixon Kavanaugh, *Coronavirus in Oregon: 3 more dead as known cases climb to 211, health officials say*, The Oregonian, (Mar. 24, 2020), available at https://www.oregonlive.com/coronavirus/2020/03/coronavirus-in-oregon-3-more-dead-as-known-cases-climb-to-209-health-officials-say.html; Wyatt Steyner, *Clark County confirms three new COVID-19 cases*, The Columbian (Mar. 24, 2020), available at https://www.columbian.com/news/2020/mar/24/clark-county-confirms-three-new-covid-19-cases/.

community and the likelihood and ease of community spread that define the term pandemic. Given that CCJ needs a full-time staff of a certain number to safely operate the jail at its capacity, employee absences due to illness or quarantine will soon cause the jail to be operating at over-capacity. CCJ charges inmates one (1) dollar to send communications, known as "kytes," to medical staff.

36.     Because of the particular threats to the health of Plaintiffs as members of the classes of people most at risk for severe COVID-19 illness and death, Plaintiffs should be provided the adequate care recommended by the CDC and health experts, including their release, if safe.

37.      Across the world, country, and Oregon, extraordinary and unprecedented measures affecting every aspect of life are being taken in the name of protecting people from this pandemic. Columbia County and the individual Defendants cannot leave people in jails to suffer and die.

**Plaintiffs are at a serious of risk of infection.**

38.     One former CCJ plaintiff Bernard Ponzi was detained at the Columbia County Jail on November 22, 2019.

39.     Mr. Ponzi lived in a cell with three other people and never spent time more than six feet away from other CCJ inmates.

40.     Mr. Ponzi observed that one of his cell mates was sick. This cell mate spent all day and night coughing and sneezing. Mr. Ponzi could not distance himself from the cell mate.

41.     Approximately two weeks ago, Mr. Ponzi began feeling ill. On or about March 15, 2020, Mr. Ponzi began feeling even more ill. His symptoms include fever, body aches, coughing, and

some sneezing. Mr. Ponzi was moved to medical isolation. When moved to medical isolation, Mr. Ponzi was not provided a mask to prevent further community spread.

42. Mr. Ponzi had his temperature checked once on March 15, 2020, and once again on March 20, 2020. Mr. Ponzi was not informed of his temperature. He has been informed that his symptoms may be "contagious."

43. As of the date of today's filing, Mr. Ponzi has not been administered a COVID-19 test. He has not seen a doctor for these flu-like symptoms. He has seen a doctor for his allergic reaction to the laundry detergent but was recommended no treatment beyond application of the cream. He was given ibuprofen and acetaminophen to treat his fever. Upon information and belief, Mr. Ponzi's medical isolation room did not provide negative pressure. To the contrary, his medical isolation appears to have been exerting positive pressure—pushing potentially infected air from his cell and out into common areas. The nurses who come in twice per day do not wear masks or gloves when examining Mr. Ponzi.

44. On or about March 23, 2020, Mr. Ponzi was released back into general population. He shared a cell with another inmate. To go about his daily life in C Ward, he was forced to be in close contact with other inmates. He had to purchase soap if he wished to properly wash his hands.

45. On or about March 24, 2020, Mr. Ponzi was released from CCJ.

46. Plaintiff Michael Thompson is currently detained at the Columbia County Jail. He was booked into the Columbia County Jail on March 9, 2020 as a pre-trial detainee. Mr. Thompson is 44 years old, has pre-diabetes, asthma, and congestive heart failure and a diabetic. The CDC puts diabetics, people with asthma, and people with serious heart conditions in the "higher risk" group

for contracting a serious illness from COVID-19.[40] Mr. Thompson remains in dormitory housing in CCJ, where he is housed with three other inmates and has never, or almost never, been more than six feet away from other inmates.

## CAUSES OF ACTION

### Claim 1
### Unlawful Violation of Fourteenth Amendment
### (42 U.S.C. § 1983 for Pre-Trial Detainees)

47. Plaintiff Class Members being held pre-trial hereby realleges and incorporates paragraphs 1-46.

48. The Fourteenth Amendment guarantees that pre-trial detainees may not be subjected to cruel and unusual punishment—here, the deliberate indifference to the serious risk COVID-19 poses to the medically vulnerable in their jail. The County violates this substantive due process right when it subjects pre-trial detainees to cruel treatment and conditions of confinement that amount to punishment or does not ensure those detainees' safety and health.

49. CCJ does not have the capacity or ability to comply with CDC guidelines to prevent an outbreak of COVID-19 and cannot provide for the safety of the Plaintiff Thompson.

50. Defendants' actions and inactions result in the confinement of the Plaintiff Class members in their jail where they do not have the capacity to treat, test, or prevent COVID-19 outbreaks, resulting in a violation of Plaintiff's constitutional right to treatment.

51. By operating CCJ without the capacity to treat, test, or prevent a COVID-19 outbreak, Defendants Pixley and McDowall, as supervisors, direct participants, and the ultimate policy

---

[40] Centers for Disease and Prevention, *Are You at Higher Risk for Severe Illness?*, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html.

makers for CCJ, have violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution.

## Claim 2
### Unlawful Violation of Eighth Amendment
### (42 U.S.C. § 1983 for Post-Sentencing Prisoners)

52. Plaintiffs Class Members being held post-trial hereby reallege and incorporates paragraphs 1-51.

53. The Eighth Amendment, as incorporated against States via the Fourteenth Amendment, guarantees that detainees may not be subjected to cruel and unusual punishment—here, the deliberate indifference to the serious risk COVID-19 poses to the medically vulnerable class members in their jail held post-trial. The County violates this right when it subjects pre-trial detainees to cruel treatment and conditions of confinement that amount to punishment or does not ensure those detainees' safety and health.

54. CCJ has neither the capacity nor ability to comply with CDC guidelines to prevent an outbreak of COVID-19 and cannot provide for the safety of the Plaintiff Class.

55. Defendants' actions and inactions result in the confinement of the Plaintiff Class in their jails where they do not have the capacity to treat, test, or prevent COVID-19 outbreaks, which is a violation of Plaintiff's constitutional right to treatment and adequate medical care.

56. By operating the Columbia County jail without the capacity to treat, test, or prevent a COVID-19 outbreak, Defendants Pixley and McDowall, as supervisors, direct participants, and the ultimate policy makers for the County Jail, have violated the rights of Plaintiff Class members under the Eighth Amendment to the United States Constitution.

## Claim 3
### Unlawful Violations of Art. 1 §§ 13, 15, and 16 of the Oregon Constitution

57. Plaintiffs reallege and incorporate paragraphs 1-56.

58. The Oregon Constitution protects the rights of the incarcerated through three sections of Article 1 of the document:

> **a. "Section 13. Treatment of arrested or confined persons.** No person arrested, or confined in jail, shall be treated with unnecessary rigor."
>
> **b. "Section 15. Foundation principles of criminal law.** Laws for the punishment of crime shall be founded on these principles: protection of society, personal responsibility, accountability for one's actions and reformation."
>
> **c. "Section 16. Excessive bail and fines; cruel and unusual punishments; power of jury in criminal case…** Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

59. Columbia County's denial of access to adequate preventative measures for COVID-19, testing and diagnostics for COVID-19, and/or treatment for symptoms of COVID-19 is disproportionate to the offense (Or Const Art. 1 § 16), creates unnecessary rigor (*Id.* at § 13), and the punishment is not tied to the "protection of society, personal responsibility, accountability for one's actions and *reformation*" of him (*Id.* at § 15) (emphasis added). Because of this, Plaintiffs' confinement is unlawful under the Oregon Constitution.

**Injunctive Relief**

60. Defendants' actions and/or inactions have injured Plaintiffs' rights as outlined above.

61. Plaintiffs are entitled to injunctive relief requiring that Defendants:

   a. mandate adequate spacing of six feet or more between inmates in CCJ so that social distancing can be accomplished in accordance with CDC guidelines, *see Brown v. Plata*, 563 U.S. 493, 511 (2011) (stating that, when a government deprives prisoners of adequate medical care, "the courts have a responsibility to remedy the resulting Eighth Amendment violation");

b. institute a safety plan to prevent a COVID-19 outbreak in accordance with CDC guidelines;

c. allow readily available and reasonable access to sanitization solutions for the purpose of cleaning cell, dormitory, laundry, and eating areas;

d. provide COVID-19 testing for Plaintiffs;

e. waive all medical co-pays for those experiencing COVID-19-like symptoms;

f. waive all charges for medical grievances during this health crisis; and

g. any other remedy the Court sees just and fit to address the constitutional violations outlined above.

## CONCLUSION

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For injunctive relief;

B. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988; and

C. Such other relief as the court deems just and proper.

DATE: March 24, 2020.

/s/ *Juan C. Chavez*
Juan C. Chavez, OSB #136428
Attorney for Plaintiff

COMPLAINT
Page 20 of 20